UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH TROYER,

    Plaintiff,                                               Hon. Robert J. Jonker

v.                                                                Case No. 1:12-CV-759

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on her alleged disability onset date. (Tr. 93). She completed the eleventh grade and worked previously as a sandwich maker and Certified Nursing Assistant. (Tr. 41, 118-25).

Plaintiff applied for benefits on September 1, 2009, alleging that she had been disabled since August 14, 2008, due to back impairments and depression. (Tr. 93-94, 107). Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 50-89). On October 27, 2010, Plaintiff appeared before ALJ Raymond Gollmitzer, with testimony being offered by Plaintiff and vocational expert, James Lozer. (Tr. 34-47). In a written decision dated November 24, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 12-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The medical record reveals that Plaintiff suffers from degenerative disc disease of the lumbar spine for which she has thus far only received conservative treatment. (Tr. 167-394). The ALJ determined that Plaintiff suffered from degenerative disc disease, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she requires a sit/stand option; (2) she can occasionally stoop, crouch, crawl, kneel, balance, and climb stairs; (3) she can never climb ladders; (4) she can occasionally drive; and (5) she must avoid heights and dangerous moving machinery. (Tr. 16).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly,

5

ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The first hypothetical question which the ALJ presented to the vocational expert concerned a person limited to light work, "as defined in the regulations,"[2] who was further subject to the following limitations: (1) can occasionally stoop, crouch, crawl, kneel, balance, and climb stairs; (2) can never climb ladders; (3) can drive occasionally; and (4) must avoid heights and dangerous moving machinery. (Tr. 44-45). The vocational expert testified that there existed "about 16,000" jobs in the state of Michigan (and 528,000 nationally) which such an individual could perform, such limitations notwithstanding. (Tr. 43-45). The vocational expert also testified that there existed "[a]bout 1,000" jobs in the state of Michigan (and 33,000 nationally) which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 43-46). Based on the vocational expert's testimony, the ALJ found that "[t]here are 16,000" jobs in the state of Michigan which Plaintiff could perform consistent with her RFC. (Tr. 19). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

Plaintiff asserts that the ALJ decision lacks substantial evidence because it is premised upon a misstatement of the vocational expert's testimony. Specifically, Plaintiff argues that when asked to consider a hypothetical person with Plaintiff's RFC, the vocational expert

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

testified that there existed only "about 1,000" jobs in the state of Michigan (and 33,000 nationally) which such a person could perform, not 16,000 jobs as the ALJ found. Plaintiff is correct.

As detailed above, the vocational expert testified that there existed "[a]bout 1,000" jobs in the state of Michigan which an individual with Plaintiff's RFC could perform. While the vocational expert did testify that there existed 16,000 jobs in the state of Michigan which a hypothetical individual could perform, such was in response to a hypothetical question concerning an individual experiencing far fewer restrictions than the ALJ found that Plaintiff experienced. Specifically, the individual in this more generous hypothetical was presumed to be able to perform light (as opposed to sedentary) work and did not require a sit/stand option. The difference between the two hypothetical questions posed by the ALJ to the vocational expert is significant as evidenced by the vocational expert's responses thereto.

Defendant concedes that the ALJ's decision suffers from the aforementioned shortcoming, but nonetheless asserts that such is harmless because 1,000 jobs in the state of Michigan (and 33,000 jobs nationally) constitutes a significant number of jobs, thus satisfying the ALJ's burden at step five of the analysis. The Court is not persuaded.

As noted above, the ALJ satisfies his burden at this final step of the analysis by establishing by substantial evidence that there exists in the national economy a significant number of jobs which Plaintiff could perform, her limitations notwithstanding. The Social Security regulations provide that this standard is satisfied when work "exists in significant numbers either in the region where [the claimant] lives or in several other regions of the country." 20 C.F.R. § 404.1566. As courts recognize, however, "[t]here is no bright line boundary separating a 'significant number' from insignificant numbers of jobs." *Howard v. Astrue*, 2012 WL 4753364 at *8 (N.D.

Ohio, Oct. 4, 2012) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Instead, "[w]hat constitutes a significant number of jobs is to be determined on a case-by-case basis" taking into consideration several factors including: (1) the nature and extent of the claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the reliability of the claimant's testimony; (4) the distance claimant is capable of traveling to perform the jobs in question; and (5) the types and availability of such work. *Anderson v. Astrue*, 2012 WL 7110362 at *5 (N.D. Ohio, Dec. 17, 2012) (quoting *Hall*, 837 F.2d at 275). As the *Hall* court further observed, this determination "should ultimately be left to the trial judge's [i.e., the ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Hall*, 837 F.2d at 275.

The ALJ's decision at step five of the analysis rested on a single factor, the inaccurate finding that the vocational expert identified 16,000 jobs in the state of Michigan (and 528,000 nationally) which Plaintiff could perform despite her limitations. For this Court to conclude that 1,000 jobs in the state of Michigan (and 33,000 jobs nationally) constitutes a significant number would require the type of fact-finding that the Court is expressly precluded from performing. As previously noted, the Court cannot conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. Instead, the Court's jurisdiction is limited to simply reviewing the Commissioner's decision and determining whether such is supported by substantial evidence.

This is not to suggest that there could never be a circumstance in which an error of the type presently at issue could be found to be harmless. However, in light of the relevant facts and circumstances, the Court cannot find the ALJ's error in this case to be harmless. While there does not exist a bright line definition of how many jobs constitutes a "significant number," common sense

dictates that there exists an assessment which any reasonable person would conclude constitutes a significant number. For example, had the vocational expert testified that there existed 50,000 (or perhaps even some lesser number) which Plaintiff could perform despite her limitations, the Court might very well find harmless the type of error committed here. However, the number of jobs which the vocational expert identified as consistent with Plaintiff's limitations is so minimal that the Court simply cannot overlook the ALJ's error. Defendant counters by citing to cases in which courts upheld decisions in which the Commissioner found that a similar number of jobs constituted a significant number. *See, e.g., Hall*, 837 F.3d at 275 (1,350 jobs is a significant number). The Court can likewise cite to cases in which a similar number of jobs was found to not be a significant number. *See, e.g., West v. Chater*, 1997 WL 764507 at *2-3 (S.D. Ohio, Aug. 21, 1997) (1,200 jobs statewide was not a significant number); *Waters v. Secretary of Health and Human Services*, 827 F.Supp. 446, 448-50 (W.D. Mich., 1992) (1,000 jobs in the state of Michigan not a significant number).

More significantly, however, a review of the Sixth Circuit's decision in *Hall* underscores why this matter must be remanded to the Commissioner. In *Hall*, the vocational expert testified that there existed "between 1350 and 1800" jobs in the local area which Hall could perform despite his impairments. *Hall*, 837 F.3d at 273-74. The Commissioner concluded that this constituted a significant number of jobs and denied Hall's application for benefits. *Id.* A federal district court subsequently granted Hall's appeal on the ground that "1,350 jobs…does not constitute a significant number of jobs within the meaning of the [Social Security] Act." *Id.* at 273. The Sixth Circuit subsequently reversed the district's court decision and affirmed the Commissioner's denial of benefits.

9

As noted above, the court held that the assessment of what constitutes a significant number of jobs is a case-by-case determination that requires the ALJ to consider several factors. *Hall*, 837 F.3d at 275. Finding that the ALJ's determination that 1,350 jobs constituted a significant number was, in light of the evidence presented to the ALJ, supported by substantial evidence, the Sixth Circuit reversed the district court's decision. *Id.* at 275-76. Furthermore, as if to underscore that the determination of what constitutes a significant number of jobs must be made on a case-by-case basis in light of the specific facts and circumstances of a particular claim, the Sixth Circuit stated that "the 1,350 figure is to be viewed in the context of this case only." *Id.* at 275. In other words, while 1,350 jobs constituted a significant number in that case it may very well not constitute a significant number of jobs under different circumstances. While this Court is empowered to review the ALJ's assessment and conclusions regarding these various factors, the Court is not permitted to makes such assessments and conclusions in the first instance. Because the ALJ's step five decision relies on nothing more than an inaccurate evaluation of the vocational expert's testimony, the Court finds that such is not supported by substantial evidence and that this matter must be remanded for further factual findings.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 23, 2013
 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge